IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| Allaeddin K. Qandah, et.al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 12-04213-CV-C-HFS |
| | ) | |
| George A. Lombardi, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Two prisoners in Missouri penal institutions seek class action protection against changes in the Missouri Constitution, adopted by the voters last August, that allegedly take from all prisoners unspecified protections of religious liberty, available since Statehood, that allegedly exceed the Federal First Amendment religious rights of such prisoners. A motion to dismiss has been filed, asserting failure to exhaust grievances, and also contending that there is no specific exercise of religious liberty identified in the complaint as endangered, and the case is therefore a moot dispute over abstract, hypothetical concepts, unripe for judicial resolution. I reject the state's first contention, but agree with the second, and will therefore dismiss.

The voters were not informed that the proposed amendment relates to prisoner rights. The ballot language, as recited in State Court litigation challenging the sufficiency of the summary, said the proposal would simply "ensure that the right of Missouri citizens to express their religious beliefs shall not be infringed" and also that "school children have the right to pray and acknowledge God voluntarily in their schools." Coburn v. Mayer, 368 S.W.3d 320, 323 (Mo. App. 2012). The amendment itself was a long and wordy general recitation of religious rights, but also provided that "this section shall not be construed to expand the rights of prisoners in state or local custody beyond those afforded by the laws of the United States." Id. [1]

---

[1] The ballot description was sustained by the Missouri court as sufficient, a decision apparently somewhat driven by the legislative requirement of a fifty-word limit on such

The limitation of prisoner rights to those deemed granted by the First Amendment is the target of this litigation.  Plaintiffs rely on State and Federal rulings saying there is a divergence between the protected religious rights under  Missouri and Federal law.  The Missouri rights have been referred to as "broader than those of the First Amendment."  Perry v. Johnston, 641 F.3d 953, 956 - 57 (8th Cir. 2011).   In different language, but also noting divergence, the Missouri Supreme  Court has concluded that Missouri's religious clauses are "more restrictive" than the First Amendment.  Gibson v. Brewer, 952 S.W.2d 239, 246 (Mo. Banc 1997).[2]

I.  Exhaustion

The State seeks dismissal of this suit because the prisoners have failed to exhaust the grievance procedures under State Law, as generally required before filing a challenge.  Plaintiffs respond that they are not complaining of prison conditions, where exhaustion is required, but of legislative action, where grievances are not permitted.   I am satisfied that no successful grievance challenging the constitutional amendment would be possible.  Therefore, since exhaustion is only required where relief by grievance is "available," that ground for dismissal is unsupported.  42 U.S.C. § 1997e (a).  No prison body would have "authority to provide any relief or take  any action whatsoever in response to a complaint"  directed against the constitutional amendment.  That is the test.   Booth v. Churner, 532 U.S. 731, 736 (2001). [3]

---

descriptions.  Id. at 326.

[2]Missouri's restrictions traditionally tend to solidify the "wall" between church and state, particularly in connection with the use of public funds in a manner assisting sectarian activities. See Paster v.  Tussey, 512 S.W.2d  97 (Mo. Banc 1979) and cases cited.

[3]Of course I do not mean that a particular restriction on prisoners that violates the First Amendment or the Missouri Constitution could not be remedied by a grievance.  No specific violation of current or preexisting rights is alleged, however, which gives defendant its  right to dismissal under the second ground asserted in its motion.  A specific complaint would presumably need to be processed under the grievance procedures.

II. Moot Questions

Defendant contends the controversy is not "ripe" for ruling on the merits, in essence because prisoners are not seeking to engage in or be relieved from some program or challenging a condition where a result would occur if the unamended Missouri Constitution were to be followed that is more favorable to them than simply using the protections of the First Amendment. Defendant contends plaintiffs are thus asking me to deal in abstractions, issuing an advisory opinion rather than one dealing with a real legal controversy. In other words, it is contended that judges should await a state of facts where the grievance procedure might be used.

Plaintiffs do fail to specify either a particular program or condition that is involved in this case, or some instance where the amendment takes away a specific right. They rest on the theory that it has already been ruled that the First Amendment is less favorable to contestants than the unamended Missouri Constitution which restricts them to First Amendment rights, and that the naming of prisoners as a disadvantaged class in the amendment suffices to entitle them to relief. I disagree on both aspects of the contention.

The Coburn ruling of last June, which the parties do not cite, even though plaintiffs' counsel were counsel in that case, refers to a contention that the amendment "will repeal prisoners' rights for religious expression" (368 S.W.3d at 323), and that this significant change in law is not disclosed to voters in the ballot description. Judge Hardwick responded for the appellate panel that the amendment "simply makes those rights coextensive with federal law," and concluded it is "purely conjectural" that some extra right under the unamended Missouri Constitution would be affected. Id. at 325. In footnote 3 she adds the comment that plaintiffs "do not cite to any cases that have interpreted article I, section 5 [of the Missouri Constitution] to provide greater free exercise rights than those found in the First Amendment."

The general statements that were made in Perry and Gibson about differences between the protection of the Missouri and Federal Constitutions were in cases dealing with subjects unrelated to prisoners' rights. The only case I find where Missouri prisoners litigated in State Court on a religious rights claim treated Missouri law as being similar to Federal law. Adams

v. Moore, 861 S.W.2d 680 (Mo. App. 1993). Experience suggests that prisoners typically litigate about grooming standards, as in Adams, dietary issues, and organized prayer opportunities. Plaintiffs do not offer any reason to suppose that the unamended Missouri Constitution would give them any greater benefits than they have under Federal law. Thus, no practical change in law can be supposed, and plaintiffs fail to suggest hypothetical situations where the results would be altered by the new amendment.

Plaintiffs fall back on a contention that they are entitled to relief from any invidious distinction in the language of the Missouri Constitution. Insofar as they deplore negative attitudes toward prisoner litigation, I acknowledge that something like special skepticism about such litigation is suggested as a motivating factor in the proviso written into the Constitutional amendment. Defendant accepts that challenge by asserting that "prisoner litigation is highly disfavored and costly . . ." (Doc. 12, p.4) I doubt this characterization appears so strongly in judicial statements. But Congress has likewise enacted special legislation having a "purpose of deterring frivolous prisoner litigation by instituting economic sanctions for prisoners wishing to file civil claims." Ashley v. Dilworth, 147 F.3d 715, 717 (8th Cir. 1998) (dissent), citing Christiansen v. Clarke, 147 F.3d 655 (8th Cir. 1998). In Christiansen, it was observed that "because prisoners have excessive amounts of free time on their hands, they are more likely than paying plaintiffs to file meritless suits." 147 F.3d at 658. See also the views expressed in Green v. McKaskle, 788 F.2d 1116 (5th Cir. 1986). Adverse stereotypes concerning prisoner litigation have not, however, been condemned as constitutionally vulnerable (although I would hope and expect that most judges would, as carefully and impartially as feasible, try to separate the wheat from the chaff).

Although special procedural rules for prisoner litigation have not been condemned, plaintiffs rely on their additional claim to pursue merely generalized rights, without discrimination as in Romer v. Evans, 517 U.S. 620 (1996), where the imposition of a "special disability" upon those seeking gay and lesbian protective legislation was invalidated. While the rights there in question were somewhat generalized, the type of protection likely to be sought was sufficiently understood as to withstand inquiry on grounds of abstractness. In this case it

would seem that the sky is the limit, and the analyst cannot sufficiently characterize the rights to be claimed so as to allow meaningful determination of whether there is a realistic limitation imposed on prisoners, comparing Federal and State law rights. Without a plausible claim of actual prejudice, justification becomes unnecessary.

    For the reasons stated, I conclude that the motion to dismiss the complaint for mootness or lack of ripeness (Doc. 8) is sound, the motion will be granted, and the complaint dismissed. SO ORDERED.

                         /s/ Howard F. Sachs
                         HOWARD F. SACHS
                         UNITED STATES DISTRICT JUDGE

February   25  , 2013

Kansas City, Missouri